IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| McKESSON CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08-2605-STA |
| | ) |
| LONGISTICS TRANSPORTATION, INC., | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER GRANTING MOTION TO TRANSFER CASE TO EASTERN DISTRICT OF NORTH CAROLINA**
_____

Before the Court is Defendant Longistics Transportation, Inc.'s Motion to Dismiss for Improper Venue or Alternatively Motion to Transfer to the Eastern District of North Carolina (D.E. # 3) filed on September 23, 2008. Plaintiff McKesson Corporation has filed a response in opposition to Defendant's Motion. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

This is a diversity case involving a claim for damages due under a shipping contract between the parties. It is undisputed that Plaintiff and Defendant are parties to a Motor Contract Carrier Transportation Agreement ("the contract"), which was entered into on April 1, 2004. Def.'s Mot. to Transfer, 1. Under the terms of the contract, Defendant transported medical and pharmaceutical goods sold by Plaintiff. *Id.* The contract contains a clause governing loss or damage to freight by which Defendant's liability to Plaintiff is limited to $250,000 in the case of

1

theft or loss of freight during shipping. *Id*. at 1-2. Defendant was required to carry insurance to cover theft or loss of the freight equal to their liability limit. *Id*. at 4. Plaintiff argues that the contract further required that all shipments be delivered to the scheduled destination on the same day the freight left Plaintiff's Memphis distribution center. Pl.'s Resp. 3. Defendant had a duty to ensure that it complied with all federal, state, and local laws for handling controlled substances which included security measures to prevent in-transit theft and procedures to hire qualified employees. *Id*. at 5. Defendant had to keep all vehicles locked in front and back at all times and activate alarms. *Id*. Plaintiff claims that with the exception of carrying appropriate insurance, Defendant failed to comply with all of these provisions.

On or about August 4, 2006, Defendant sent two drivers and two Kenworth trucks with refrigerated trailers to Memphis, Tennessee, where pharmaceutical products owned by Plaintiff were loaded onto the trailers and locked. Def.'s Mot. to Transfer, 3. According to Defendant, neither Defendant nor its drivers have access to the trailers or are informed about the contents of the freight. *Id*. On Friday, August 5, 2006, the drivers arrived at Defendant's trucking terminal in Raleigh, North Carolina where the trailers were parked over night. *Id*. Defendant avers that the freight could not be accepted until August 7, 2006, in the Northeastern United States. *Id*. While parked over night at Defendant's terminal, the freight was stolen. *Id*. Plaintiff argues that the terminal had no guardhouse, security fence, or other security to safeguard the trailers. Pl.'s Resp. 3. On Saturday, August 6, Duane Long, president of Longistics, notified Plaintiff's Memphis facility of the theft. *Id*. at 4.

Defendant argues that the venue in this District is improper and that the Court should either dismiss the case or transfer it to the Eastern District of North Carolina. Defendant's

2

operations are based in Raleigh, North Carolina, including the terminal where the theft occurred. The trailers and trucks were both owned by Defendant. The drivers employed by Defendant are North Carolina residents. Defendant executed the contract upon which this suit is based at its headquarters in North Carolina. The investigations into the theft were conducted in Raleigh, North Carolina. For its part Plaintiff's corporate headquarters are in San Francisco, California. Defendant contends that none of the material events in this case occurred in Memphis, Tennessee. Pursuant to 28 U.S.C. 1404(a), Defendant argues that the Eastern District of North Carolina would provide a more convenient forum for this suit. Many of the witnesses with knowledge of the events giving rise to this claim are located in North Carolina. All of the operative facts occurred in Raleigh, North Carolina including the theft of the freight at the trucking terminal. According to Defendant, all relevant evidence concerning the theft is kept in North Carolina, not Memphis. Finally, Defendant contends that there are few connections to this District in light of the fact that Plaintiff's headquarters are in California and Defendant's are in North Carolina. Therefore, Defendant moves that the matter be dismissed or transferred to the Eastern District of North Carolina.

Plaintiff opposes Defendant's Motion to Transfer arguing that venue is proper in this District. This Court has personal jurisdiction over both parties and consequently venue is proper here. According to Plaintiff, Defendant has ongoing contacts in this District maintaining an office and dispatching trucks to Plaintiff's Memphis distribution center. Plaintiff further argues that a substantial part of the events which give rise to this suit occurred in this District and that a majority of witnesses and documents associated with the parties' contract are in Memphis and California. The freight was loaded and sealed by Plaintiff's employees in Memphis. Plaintiff's

3

Memphis distribution center contacted Defendant's Memphis office to arrange the pick-up and delivery of the freight according to shipping documents and shipping instructions created by Plaintiff in the Memphis distribution center. Those instructions did not include an overnight stop in Raleigh, North Carolina, and Plaintiff had no expectation that such a stop would be made.

Additionally, Plaintiff contends that Defendant has failed to show that the Eastern District of North Carolina will be a more convenient forum for the parties. Plaintiff argues that it would be greatly prejudiced by the transfer because it has no witnesses or other sources of proof in North Carolina. According to Plaintiff, the theft itself is undisputed, and only one witness would be necessary to testify as to the security of Defendant's trucking terminal in North Carolina. On the other hand, all of the employees of both parties who arranged the shipment, set the delivery schedule, and sealed the containers were in Memphis. Concerning corporate witnesses, Plaintiff's witnesses would travel from California. The additional travel to North Carolina would only increase their inconvenience. The majority of the relevant documentary evidence is also in Memphis including the shipping documents, the shipping instructions, and security sign-out sheets. The events which give rise to the dispute are centered in this District because the actual communications between the parties took place in Memphis. For these reasons, Plaintiff argues that venue is proper and that transfer is not warranted.

## **ANALYSIS**

Pursuant to 28 U.S.C. 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it

might have been brought."[1] A district court is granted broad discretion when deciding a motion to transfer. Among the relevant factors, the Court should consider (1) the location of willing and unwilling witnesses, (2) the residence of the parties, (3) the location of sources of proof, and (4) the location of the events that gave rise to the dispute.[2]

Although the Court does not believe that venue is improper in this District, it appears that in the interest of justice and for the convenience of the parties, this matter should be transferred to the Eastern District of North Carolina. It is undisputed that this is a suit for breach of contract and that Defendant executed the contract in Raleigh, North Carolina. Under the contract, Defendant undertook certain duties including the delivery of all shipments the same day; compliance with all federal, state, and local laws for handling controlled substances; adequate security measures to prevent in-transit theft; the hiring of qualified employees; and locking all vehicles in front and back at all times and activating alarms. It is further undisputed that the theft of Plaintiff's freight from Defendant's trucks took place in Raleigh, North Carolina. Plaintiff has alleged that the theft occurred as a result of Defendant's breach all of these contract provisions. More specifically, Plaintiff's Complaint states that Defendant breached the contract in the followings ways:

    a) Unilaterally overnighting the two trailers with the subject Cargo in an unsecured and unprotected parking lot;

    b) By failing to immobilize or otherwise secure the two trailers with the subject Cargo

---

[1] 28 U.S.C. 1404(a).

[2] *Walker v. Consumers Power Co.*, 1990 WL 16387 (6th Cir.), *cert. denied* 498 U.S. 815, 111 S.Ct. 55, 112 L.Ed.2d 30 (1990). *See also Blane v. American Inventors Corp.*, 934 F. Supp. 903 (M.D. Tenn. 1996).

while they were left unprotected and unsecured in the parking lot;

  c) Failing to properly and adequately provide for protection and security of the subject Cargo while left overnight in the parking lot;

  d) By failing to adhere to the requirements of the Transportation Agreement;

  e) By failing to safeguard the subject Cargo at all times pertinent hereto.[3]

All of these specific allegations relate to Defendant's conduct at Defendant's trucking terminal in Raleigh, North Carolina. As a result, if any breach occurred, it appears to the Court that it occurred in Raleigh, North Carolina, and not Memphis, Tennessee. These facts all weigh in favor of transfer.

Applying the relevant factors to this case, transfer is warranted. First and foremost, the operative facts occurred primarily in North Carolina. While it is true that the shipment originated in Memphis and shipping instructions were given in Memphis, the alleged breach of the contract occurred as a result of events that took place in Raleigh, North Carolina. The decision to leave the trailers overnight at the terminal, Defendant's alleged lack of security measures, and the resulting theft of the freight are the operative facts that led up to the alleged breach of contract. Plaintiff asks the Court to disregard the fact that the theft occurred in North Carolina because the shipments were never supposed to pass through North Carolina. However, had the trucks never ended up in Raleigh, North Carolina, the theft would not have happened and there would have been no alleged breach of the contract. Thus, the operative facts are largely based in North Carolina.

Second, it appears that more key witnesses are located in the Eastern District of North

---

[3] Compl. ¶ 11.

Carolina than in this District. Defendant has its corporate headquarters in Raleigh, North Carolina, and so its corporate witnesses with knowledge of the contract and its terms are located in that District. More importantly, the allegations concern the conduct of Defendant and its agents in Raleigh, North Carolina. Material facts about who decided to leave the trailers over night in Raleigh and how the trailers were secured at Defendant's trucking terminal there will be central to this case. Witnesses with knowledge of the general security at the terminal in August 2006 and of the specific events of August 5-6, 2006 are more likely to be found in the Eastern District of North Carolina. This is not to say that there will not be witnesses from this District. Plaintiff has argued that its employees at the Memphis distribution center have knowledge of the shipping instructions and the manner in which the trailers were sealed when the shipments left. However, the witnesses with knowledge about the alleged material breach of the contract will presumably be available in North Carolina.

Third, transfer will promote ease of access to sources of proof. As previously discussed, because the operative facts occurred in Raleigh, North Carolina, and fact witnesses are available in Raleigh, North Carolina, access to sources of proof will be greater there than in this District. Furthermore, Defendant executed the contract in Raleigh, North Carolina and has its corporate headquarters there. As both parties are corporations conducting business in multiple states, both should be able to produce the relevant documentary evidence regardless of which district hears this case. The Court finds then that this factor also favors transfer.

Finally, as for the residence of the parties, neither party has its corporate headquarters or principal place of business in this District. Neither party appears to be incorporated under the laws of the state of Tennessee. It is true that this Court has personal jurisdiction over these

7

parties by virtue of their continuous and ongoing contacts with this District. Both parties have offices in this District and conduct business here which gave rise to the claims in this suit. Consequently, Plaintiff is correct that venue is proper here. On the other hand, Plaintiff is a Delaware corporation with its headquarters in San Francisco, California. Defendant has its corporate headquarters in Raleigh, North Carolina and is incorporated under the laws of the state of North Carolina. Therefore, the Court holds that neither party is a resident of this District and transfer to the Eastern District of North Carolina where Defendant is a resident is appropriate.

Having considered the relevant factors, this Court finds that transfer to the Eastern District of North Carolina will be in the parties' interests and in the interests of justice. Therefore, Defendant's Motion to Transfer to the Eastern District of North Carolina is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 2nd, 2009.